IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SARI ALQSOUS,

                      Petitioner,

  v.                                                      OPINION and ORDER

WARDEN E. EMMERICH,                                    25-cv-722-jdp

                      Respondent.

---

Petitioner Sari Alqsous is a Jordanian citizen serving a 12-and-a-half year sentence at FCI Oxford. He seeks emergency relief under 28 U.S.C. § 2241. Dkt. 1 and Dkt. 3. Alqsous contends that he's entitled to 1,381 days of earned-time credits under the First Step Act (FSA) that, if fully applied, would result in his immediate transfer to home confinement. Alqsous is proceeding without counsel.

The Bureau of Prisons has applied 365 days of Alqsous's FSA credits toward his release to supervised release. But, following current BOP policy, the BOP declines to apply the remaining credits to prerelease custody because he's subject to an immigration detainer. Alqsous contends that the BOP's refusal conflicts with the plain language of the FSA. Alqsous also challenges the BOP's policy on procedural due process and equal protection grounds.

Alqsous's petition requires the court to resolve the tension between some apparently mandatory language in the FSA with the BOP's longstanding authority over the place of an inmates' confinement. I conclude that Alqsous's statutory claim fails because the BOP has broad statutory authority to designate a prisoner's place of confinement; its decision not to transfer Alqsous to prerelease custody is an appropriate exercise of that authority in view of his immigration status. The due process claim fails because Alqsous does not have a protected

liberty interest in the application of earned FSA time credit. The equal protection claim fails because the BOP's policy is rationally related to the legitimate governmental interest of preventing undocumented immigrants from fleeing less restrictive environments.

I will deny the petition. I will also deny as moot Alqsous's emergency motion seeking an order for immediate transfer to home confinement pending resolution of the petition.

BACKGROUND

**A. Statutory overview and BOP policies on immigration detainers**

For decades the Attorney General has had "unfettered authority to decide where to house federal prisoners." *See Matter of Gee*, 815 F.2d 41, 42 (7th Cir. 1987); *see also Brown v. Carlson*, 431 F. Supp. 755, 770 (W.D. Wis. 1977). The basis of this authority was a federal statute, 18 U.S.C. § 4082. *See* P.L. 89-176, § 4082(b), 79 Stat. 674, 674 (Sep. 10, 1965); P.L. 80-772, § 4082, 62 Stat. 683, 850 (June 25, 1948). In 1984, Congress replaced § 4082 with 18 U.S.C. § 3621(b), which, in material part, provides that "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment." *See also Barden v. Keohane*, 921 F.2d 476, 481 (3d Cir. 1990); *Zucker v. Menifee*, No. 03-cv-10077, 2004 WL 102779, at *8 (S.D.N.Y. Jan. 21, 2004).

More recently, federal law has also encouraged the BOP to provide prerelease placement in less restrictive environments for the final part of an inmate's incarceration. Under the Second Chance Act of 2007, the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months)" in prerelease custody. 18 U.S.C. § 3624(c)(1). Such prerelease custody "may" include placement in a halfway house or on home confinement. *See id.* § 3624(c)(1)–(2). But the

Second Chance Act also preserves the BOP's authority to determine the place of incarceration: "[n]othing in [§ 3624(c)] shall be construed to limit or restrict the authority of the [BOP] under § 3621." § 3624(c)(4).

Prerelease placement is also encouraged in the First Step Act, which took effect in December 2018. The FSA provides incentives for federal prisoners to participate in recidivism reduction programming. § 3632(d)(4)(A). The main incentive is time credits that can accelerate certain prisoners' placement in prerelease placement and supervised release. Pursuant to § 3632(d)(4)(C), earned-time credit "shall be applied toward time in prerelease custody or supervised release," and the BOP "shall transfer eligible prisoners . . . into prerelease custody or supervised release." *Id.*

But movement to prerelease placement is complicated for non-citizens who may face deportation at the conclusion of incarceration. As early as December 1998, the BOP had a policy making prisoners assigned a "deportable alien" public safety factor ineligible for placement in halfway houses. *See* Program Statement 7310.04(1), (10)(b) (Dec. 16, 1998). Dkt. 13-4. Under the FSA, a prisoner is ineligible to apply time credits under § 3632(d)(4)(C) "if the prisoner is the subject of a final order of removal under any provision of the immigration laws." § 3632(d)(4)(E)(i).

In November 2022, the BOP issued Program Statement 5410.01 to implement the FSA. *See* Dkt. 13-3 at 1; *see also Hudson v. Streeval*, No. 23-cv-137, 2024 WL 346521, at *3 (W.D. Va. Jan. 30, 2024). Under this Program Statement, inmates with immigration detainers could earn time credits, but could not apply them to prerelease custody or release to supervision unless the detainers were resolved. *Mohammed v. Engleman*, No. 25-cv-1011, 2025 WL 1647097, at *2 (C.D. Cal. June 5, 2025).

3

Several district courts rejected the BOP's position that prisoners with immigration detainers were categorically ineligible to have their earned FSA time credit applied toward prerelease custody or supervised release. *See, e.g.*, *Komando v. Luna*, No. 22-cv-425, 2023 WL 310580, at *6 (D.N.H. Jan. 13, 2023) (collecting cases), *report and recommendation approved sub nom. Komando v. FCI Berlin*, 2023 WL 1782034 (D.N.H. Feb. 6, 2023).

In response to the unfavorable district court opinions, in February 2023, the BOP issued a change notice to Program Statement 5410.01 (CN-2), which eliminated unresolved immigration detainers as a disqualifying factor for the application of earned FSA time credit. *See* Dkt. 13-1 at 1; *see also De Lima v. Warden, FCI Ft. Dix NJ*, No. 24-cv-6925, 2024 WL 3580665, at *1 (D.N.J. July 26, 2024). Under the revised Program Statement 5410.01, prisoners subject to immigration detainers could apply their earned FSA credit toward prerelease release custody or supervised release. *See Mohammed v. Engleman*, No. 25-cv-1011, 2025 WL 1909836, at *2 (C.D. Cal. July 9, 2025) ("*Mohammed II*"), *report and recommendation adopted*, 2025 WL 2294325 (C.D. Cal. Aug. 8, 2025).

But the BOP reversed course again in early 2025. On January 30, 2025, the BOP issued a memorandum containing updated guidance regarding the application of FSA time credits to prerelease custody for non-citizens with immigration detainers. *Popoola v. Scales*, No. 25-cv-390, 2025 WL 3473370, at *2 (E.D. Va. Dec. 3, 2025). The January 30 memorandum provided that, effective immediately, pending placements in prerelease custody for prisoners with immigration detainers would be canceled. *Id.*

On April 8, 2025, the BOP issued another memorandum announcing a return to its original policy that prisoners with unresolved immigration detainers are mostly ineligible to have earned FSA credit applied to their sentences. Dkt. 13-5. The memorandum provides, in

4

material part, that if a prisoner with an immigration detainer has earned FSA time credit and is otherwise eligible to apply those credits, "the BOP will only apply those credits—up to 365 days—to early release," but not for "transfer to prerelease custody." Dkt. 13-5 at 2; *see also Mohammed II*, 2025 WL 1909836, at *2–3.

### B. Alqsous's conviction and efforts to apply earned FSA time credit

Alqsous is serving a total term of 151 months' imprisonment following convictions in the Northern District of Ohio on multiple counts related to bribery, extortion, wire fraud, kickbacks, mail fraud, and obstruction. Dkt. 2 at 3; *United States v. Hills*, 16-cr-329-2, Dkt. 517. The BOP has applied 365 days of Alqsous's earned FSA time credits toward early release. Assuming that he does not lose any good time credits, he would release from incarceration to supervised release on April 14, 2028. The 365 days of credit toward early release are not at issue in Alqsous's petition.

In February 2025, Alqsous requested an administrative remedy to be placed in a halfway house based on his earned but unapplied FSA time credit. Dkt. 2-1 at 3–5. Respondent denied the request that month, stating that Alqsous was ineligible for that placement because he was subject to an active immigration detainer. *See id.* at 6. Respondent explained that on January 30, 2025, the BOP issued guidance stating that, effective immediately, prisoners with immigration detainers should not be referred for transfer to prerelease custody. *See id.* Alqsous appealed and, on April 1, 2025, the regional director denied the appeal for the same reason as respondent. *Id.* at 7–8.

Alqsous submitted an appeal to the BOP's central office, which was received in late April 2025. *Id.* at 9–10. A response was due by June 27, 2025. *Id.* Alqsous didn't receive a

response by that date, allowing him to "consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18; *see also* Dkt. 1 at 3; Dkt. 2-1 at 9–10.

Alqsous brought his petition in late August 2025. Dkt. 1. The government submitted a response and Alqsous replied. Dkt. 12 and Dkt. 15.

ANALYSIS

**A. Jurisdictional issue**

I begin with respondent's jurisdictional argument. Respondent argues that the relief that Alqsous seeks, transfer from one form of custody to another, is unavailable in a § 2241 petition. This relief, respondent says, is available in only a civil rights action.

As a general rule, a district court may grant a § 2241 petition if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). The basic rule is that if a federal prisoner challenges the BOP's execution of his sentence, but not the validity of the sentence imposed by the court, the proper avenue of relief is a § 2241 petition. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998); *see also Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000). For example, a § 2241 petition would be the proper means of challenging a wrongful denial of good time credit. But if a prisoner challenges the conditions of his confinement, but not the fact of his confinement, he must bring a civil rights action. *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005).

It's not always immediately clear whether a prisoner challenges the fact of confinement or the conditions of confinement. The court of appeals has provided this guidance: if a prisoner seeks "a quantum change in the level of custody," then "habeas corpus is his remedy." *Id.* at 386–87. But if the prisoner "is seeking a different program or location or environment, then

6

he is challenging the conditions rather than the fact of his confinement." *Id.* at 387. A change in a prisoner's level of custody is "quantum" only if the prisoner "is seeking to get out of custody in a meaningful sense." *See id.* at 388.

Respondent contends that Alqsous's request for transfer to prerelease custody is a request for transfer to a different location or environment and, thus, cannot be brought in a § 2241 petition. The court of appeals has not settled whether a federal prisoner can bring a request for transfer to prerelease custody in a § 2241 petition, but it has described a halfway house as "a twilight zone between prison and freedom." *Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir. 1989). "Halfway houses are, as the name suggests, facilities that hold their charges in custody part of the time (usually nights and weekends) while releasing them during working hours, so they can begin employment and start the transition to a life of freedom." *United States v. Mallon*, 345 F.3d 943, 949 (7th Cir. 2003). Placement in home confinement is potentially even less restrictive. *United States v. Early*, No. 09-cr-282, 2020 WL 2112371, at *1 (N.D. Ill. May 4, 2020). These cases suggest that transfer to a halfway house or home confinement involves a quantum change in a prisoner's level of custody. Absent more specific guidance from the court of appeals, I will assume that § 2241 is an appropriate vehicle for a prisoner to raise a federal-law challenge to the BOP's refusal to apply earned FSA time credit toward placement in prerelease custody.

*Glaus*, which went the other way, is distinguishable. There, a petitioner with a serious liver disease brought an Eighth Amendment claim based on the denial of medical care and sought transfer to a prison medical facility or, alternatively, release to the community to receive treatment at a local hospital. *See* 408 F.3d at 384–85. It was clear, given the Eighth Amendment argument, that the petitioner was "challenging the conditions, as opposed to the fact, of

7

confinement." *See id.* at 385. Here, by contrast, Alqsous does not raise a well-recognized civil rights claim—he seeks release from the strict confinement of a federal prison. *See id.*

I will consider Alqsous's petition on the merits.

**B. Statutory claim**

Alqsous's primary contention is that the BOP's decision not to apply his FSA time credit toward placement in home confinement violates the FSA's plain language. Alqsous contends that § 3632(d)(4)(A)'s and § 3632(d)(4)(C)'s use of the term "shall" imposes a mandatory duty on the BOP to apply earned FSA credit "toward time in prerelease custody or supervised release," and to "transfer eligible prisoners . . . into prerelease custody or supervised release." Alqsous acknowledges that § 3632(d)(4)(C) provides that a prisoner is ineligible to apply time credits under § 3632(d)(4)(C) "if the prisoner is the subject of a final order of removal under any provision of the immigration laws." § 3632(d)(4)(E)(i). But Alqsous argues that the express exclusion of prisoners subject to final orders of removal implies that everyone else is eligible for the application of earned FSA time credit. Alqsous contends that Congress could have explicitly excluded prisoners with immigration detainers if it meant to make them ineligible for that relief based solely on that immigration status.

I've found no controlling authority on whether the FSA requires the BOP to apply the earned-time credit of a prisoner subject to an immigration detainer. Some district courts have taken Alqsous's position, concluding that the BOP's most recent policy to deny the application of earned FSA time credit to prisoners with immigration detainers is unlawful. *See, e.g., Popoola*, 2025 WL 3473370, at *13 ("[T]he FSA does not permit the exclusion of non-citizens with detainers from earning and applying FSA time-credits.").[1] These cases are consistent with the

---

[1] *See also Mateo v. Warden, FCI Danbury*, No. 25-cv-814, 2025 WL 2625263, at *6–11 (D.

prior line of district court cases rejecting the BOP's position that prisoners with immigration detainers were categorically ineligible to have earned FSA time credit applied toward prerelease custody or supervised release. *See, e.g., Komando*, 2023 WL 310580, at *6.

But some courts have gone the other way. At least two federal district judges in New Jersey have concluded that the FSA did not alter the BOP's broad discretion under § 3621(b) to deny the application of earned-time credit to prisoners with immigration detainers. *See Akinmadeyemi v. Warden Thompson, FCI Fort Dix,* No. 24-cv-7003, 2025 WL 2857084, at *2 (D.N.J. Oct. 9, 2025) ("Given the BOP's broad discretion to deny pre-release placement in a residential facility to deportable aliens, . . . Petitioner has no right to a transfer to a residential facility and the BOP has properly used its discretion and authority to determine such a placement is inappropriate in light of Petitioner's immigration detainer."); *Martinez-Polanco v. Warden, FCI Fort Dix*, No. 24-cv-7005, 2025 WL 1511192, at *4 (D.N.J. May 27, 2025) ("Under . . . BOP's discretion to make placement determinations . . . , [the petitioner's] immigration detainer independently barred him from prerelease custody to home confinement . . . ."). Likewise, the Third Circuit Court of Appeals has stated in an unpublished opinion that a petitioner with a deportable alien public safety factor subject to an immigration detainer "is ineligible to use earned time credits for immediate release to residential re-entry programs or

---

Conn. Sept. 11, 2025); *Mohammed II*, 2025 WL 1909836, at *14 ("The Court concludes that BOP's new detainer policy is *ultra vires*."); *Williams v. Warden, FCI Berlin*, No. 23-cv-509, 2025 WL 2207024, at *4 (D.N.H. Aug. 4, 2025) ("Courts that have considered the legality of BOP's new policy to deny placement in prerelease custody for persons with active detainers have held that the policy violates the FSA." (collecting cases)); *Adepoju v. Scales*, 782 F. Supp. 3d 306, 319 (E.D. Va. 2025) ("[T]he removal from a residential reentry center and reincarceration of Mr. Adepoju, an FSA-eligible prisoner not subject to a final order of removal, violates the First Step Act."); *Kuzmenko v. Phillips*, No. 25-cv-663, 2025 WL 779743, at *2, *5–6 (E.D. Cal. Mar. 10, 2025).

home confinement." *Pisman v. Warden Allenwood FCI Low*, No. 23-2048, 2023 WL 6618238, at *1 (3d Cir. Oct. 11, 2023).

As for this court, I have previously concluded that the FSA does not require the BOP to place a prisoner with an immigration detainer in prerelease custody or supervised release even though the prisoner may be eligible for that relief under the statute. *See Ferreras v. Emmerich*, 24-cv-347-jdp, Dkt. 6 at 2 ("Even if the application of FSA time credits to Ferreras's sentence would make him *eligible* for immediate release, the BOP has plenary control over its inmates' placement." (emphasis in original)); *Okafor v. Keyes*, 24-cv-87-jdp, Dkt. 16 at 2 ("Because the evidence shows that Okafor is ineligible for halfway house placement under *BOP policy*, respondent didn't abuse his discretion in denying him that placement." (emphasis added)).

In other related contexts, some district courts have concluded that "[t]he First Step Act did not alter the BOP's statutory authority to determine when, or if, a prisoner should be released to a residential reentry center or to home confinement." *Frierson v. Rardin*, No. 24-cv-12456, 2025 WL 410072, at *5 (E.D. Mich. Feb. 5, 2025); *see also Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *22 (D.D.C. June 9, 2025) ("Release into prerelease custody, no matter under the FSA or Second Chance Act, must conform with the BOP's requirements in designating places of imprisonment under § 3621."); *Mingo v. Bragg*, No. 20-cv-10, 2020 WL 8371203, at *2 (D.S.C. July 28, 2020) ("The First Step Act did not alter the BOP's statutory authority to determine when, or if, a petitioner is placed in an RRC or on home confinement."), *report and recommendation adopted*, 2021 WL 327377 (D.S.C. Feb. 1, 2021).

I conclude that the better view is that the FSA did not strip the BOP of its discretion to deny prerelease custody to prisoners with immigration detainers. The longstanding rule is that the BOP has plenary power to "designate the place of the prisoner's imprisonment." § 3621(b); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). Congress reaffirmed the BOP's broad authority to determine a prisoner's place of confinement in the Second Chance Act, which provides that nothing in the Act "shall be construed to limit or restrict the authority of the [BOP] under § 3621." § 3624(c)(4). When Congress enacted the FSA, it amended § 3621(b) to provide: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." First Step Act of 2018, P.L. 115-391, § 601, 132 Stat. 5194, 5237 (Dec. 21, 2018). So even as Congress has expanded potential eligibility for placement in prerelease custody, it has recognized the BOP's broad authority to designate a prisoner's placement of confinement.

Congress has also recognized that non-citizen prisoners facing deportation pose special problems that warrant deviation from the general policy favoring earlier placement on pretrial release. Some of those problems are common-sense practical ones. Prisoners can earn enormous amounts of FSA credits, such as the nearly four years of credits earned by Alqsous. Even after application of the maximum of 365 days of credits to supervised release, he still had nearly three years of credits left.[2] Halfway house placement is a scarce resource, and it would be impractical to find such long placements for the legions of prisoners earning those credits at

---

[2] The parties dispute the number of credits that Alqsous has earned. The actual number is not material to the outcome of Alqsous's petition, so for purposes of this order, I'll accept Alqsous's position.

the pace provided in the FSA. And home confinement isn't an easy answer, because those legions of prisoners would overtax district probation offices that would be called upon to supervise their confinement.

Against that backdrop, I conclude that Congress's use of the term "shall" in 3632(d)(4)(A) and § 3632(d)(4)(C) does not create a categorical duty for the BOP to apply a prisoner's earned FSA time credit to prerelease placement. Use of the term "shall" in a statute does not always create a mandatory duty. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 761 (2005). *Gonzales* acknowledged the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands." *See id.* And it seems implausible that Congress intended the FSA to create a categorical duty for the BOP to place all prisoners subject to immigration detainers in prerelease custody, sometimes for multiple years at a time, based solely on their earned-time credits. *Cf. id.* (noting that common sense must inform court's interpretation of seemingly mandatory legislative commands to law enforcement officials).

I conclude that Congress did not strip the BOP of its broad discretion to deny prerelease custody to prisoners with immigration detainers when it enacted the FSA.

## C. Procedural due process claim

Alqsous contends that the FSA created a liberty interest in the application of his earned-time credit, and that the BOP deprived him of this interest based on "a secret internal policy" "without any process whatsoever." Dkt. 2 at 9.

Alqsous must show "a constitutionally protected liberty . . . interest in order for some process to be 'due' under the Fifth Amendment." *See Adame v. Holder*, 762 F.3d 667, 670 (7th Cir. 2014) (parentheses omitted). A liberty interest must be protected by the Due Process

12

Clause itself or created by other federal law or state law. *See Caldwell v. Miller*, 790 F.2d 589, 602 (7th Cir. 1986).

Alqsous argues that he has a liberty interest in the application of his earned-time credit because the FSA uses "explicitly mandatory language" that creates an "objective expectation" of a particular outcome. Dkt. 2 at 8 (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 465 (1989)). But, as explained above, the FSA doesn't require the BOP to apply the earned time credits of prisoners with immigration detainers; § 3621(b) gives the BOP broad discretion to determine prisoner placements. Consistently, "[c]ourts have routinely held that a federal prisoner does not have a liberty interest in receiving credits under the FSA." *Sedlacek v. Rardin*, No. 24-1254, 2025 WL 948485, at *1 (6th Cir. Jan. 21, 2025) (collecting cases); *see also Murdock v. Emmerich*, No. 25-cv-480-jdp, 2025 WL 1883840, at *2 (W.D. Wis. July 8, 2025); *Quinones v. Emmerich*, No. 25-cv-25-wmc, 2025 WL 1638436, at *2 (W.D. Wis. June 9, 2025); *Gant v. King*, No. 23-cv-1766, 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023).

Alqsous hasn't shown that he had a liberty interest in the application of his earned FSA time credit.

Respondent contends that, even if Alqsous had a liberty interest in the application of his earned FSA time credit, he received all the process that he was due. Respondent explains that a placement decision under the Second Chance Act must be based on an individualized application of the five factors listed in § 3621(b), and he contends that Alqsous received that review during a meeting with his unit team on July 30, 2025. *See* Dkt. 12 at 15–17. Alqsous replies that his review was an empty formality because he was "subjected to a predetermined denial based on a rigid national policy." Dkt. 15 at 7. I need not consider whether Alqsous got

13

a legitimate five-factor review because I determined that Alqsous lacked a liberty interest in the application of his earned FSA time credit.

I do not take Alqsous to contend that he is entitled to habeas relief because the BOP denied him an individualized five-factor review. If Alqsous raised this contention, it would fail for two reasons. First, Alqsous raised it for the first time in his reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Second, a challenge to the BOP's failure to provide an individualized review under § 3621(b) could not be brought in a habeas petition because success on the claim, at most, would entitle a prisoner to a new review with the proper procedures, not transfer to prerelease custody. *See Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004).

Alqsous's procedural due process claim fails.

## D. Equal protection claim

Alqsous contends that the BOP's policy barring the application of earned FSA time credit to prisoners with immigration detainers violates his Fifth Amendment right to equal protection under the law. Alqsous explains that the policy draws an "arbitrary" distinction based on alienage and lacks a "rational relationship to any legitimate penological interest." Dkt. 2 at 9–10.

This challenge arises under the Fifth Amendment, which "contains an equal protection component." *United States v. Brucker*, 646 F.3d 1012, 1016–17 (7th Cir. 2011). Fifth Amendment equal protection claims are generally evaluated under the same standards as Fourteenth Amendment equal protection claims. *See id.* at 1017. "For claims based on either the Fifth or the Fourteenth Amendment, equal protection of the laws means that all persons similarly situated should be treated alike." *Id.* (alteration adopted).

The first step is to determine the correct standard of constitutional review. *Doe v. Edgar*, 721 F.2d 619, 622 (7th Cir. 1983). Traditionally, "a classification will be subject to strict scrutiny, and upheld only if necessary to promote a compelling governmental interest, if it impinges upon a fundamental right or operates to the peculiar disadvantage of a suspect class." *Id.*

Strict scrutiny does not apply to Alqsous's challenge to the BOP policy. There is no "fundamental right to home confinement or to participate in rehabilitative programs." *Hussain v. Warden Allenwood FCI*, No. 22-1604, 2023 WL 2643619, at *3 (3d Cir. Mar. 27, 2023). Or put differently, "time credits on a federal sentence do not implicate a fundamental right that is implicitly or explicitly guaranteed by the Constitution." *Quinones*, 2025 WL 1638436, at *2. Nor are "[u]ndocumented aliens . . . a suspect class." *Plyler v. Doe*, 457 U.S. 202, 223 (1982); *see also Gallegos Hernandez v. United States*, 688 F.3d 190, 196 (5th Cir. 2012).

Intermediate scrutiny applies to some classifications based on alienage. *See Plyer*, 457 U.S. at 223–24. Even if the BOP's policy barring the application of earned FSA time credit to prisoners with immigration detainers is based on alienage, intermediate scrutiny does not apply to a federal law (in contrast to a state law) that classifies based on alienage. *See United States v. Skrmetti*, 605 U.S. 495, 549 n.1 (2025) (Barrett, J., concurring); *id.* at 569 n.7 (Alito, J., concurring); *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999).

Because neither strict nor intermediate scrutiny applies, the BOP's policy "is merely subject to rational basis scrutiny and will be upheld if it bears a rational relationship to a legitimate governmental interest." *See Edgar*, 721 F.2d at 622. This standard is easily satisfied. "[C]ourts have repeatedly recognized that the BOP has a rational basis to exclude aliens from receiving time credits or access to programs that would hasten their release to community-based

15

housing such as a half-way house or home confinement." *Garcia Manzanares v. Emmerich*, No. 25-cv-426-wmc, 2025 WL 1859146, at *2 (W.D. Wis. June 11, 2025) (collecting cases); *see also Hussain*, 2023 WL 2643619, at *3. Courts, including this one, "have repeatedly rejected equal-protection challenges to the First Step Act's classifications based upon a prisoner's deportable status, concluding that prohibiting removable aliens from applying time credits to their sentences and releasing them into the community serves the legitimate purpose of reducing the risk that aliens facing deportation will flee." *Garcia Manzanares*, 2025 WL 1859146, at *2 (collecting cases); *see also Quinones*, 2025 WL 1638436, at *3. Alqsous's equal protection claim fails.

Because I am denying the petition, I will deny Alqsous's request for emergency injunctive relief as moot.

## ORDER

IT IS ORDERED that:

1. Petitioner Sari Alqsous's habeas petition, Dkt. 1, is DENIED.
2. Petitioner's motion for emergency injunctive relief, Dkt. 3, is DENIED as moot.
3. The clerk of court is directed to enter judgment and close the case.

Entered January 16, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge